## STONE, EMERY & CAMP *v.* ORRISON FOSTER.

The plaintiffs, being indebted to the defendant in the sum of $60, requested the defendant to obtain a sum of money, exceeding $100, due from a third person to the plaintiffs, and take sufficient from it to pay what was due to him, and gave the defendant an order on such third person therefor. The defendant obtained the money, and, refusing to pay to the plaintiffs the balance, less than $100, due to them after paying the amount due to the defendant, the plaintiffs commenced an action on book account against him therefor; and it was held that an action on book account would lie to recover such balance, and that the county court had original jurisdiction of such action.

Where a question as to the agency of a person is litigated before an auditor, and he does not report directly that the person was agent, but reports such other facts as show to the court that he was in reality agent, although the county court might, in their *discretion*, have rejected the report for that reason, yet, if they accept the report, the supreme court cannot revise that decision. .

BOOK ACCOUNT. The plaintiffs, on the hearing before the auditor, presented an account against the defendant for $108.42, cash paid to him by the Amoskeag Manufacturing Company, and credited him by freight of starch at two separate times $42.06, and by cash $20.00. The defendant presented no account. The auditor reported, in substance, as follows.

In June, 1841, the defendant was the owner of two teams, employed in carrying freight to Boston; he sold one of the teams to one Shedd, and agreed to furnish Shedd with freight from that time until the January following. The plaintiffs were engaged in the manufacture of starch. In October, 1841, the defendant called on the plaintiff Stone, and wished to carry for him a load of starch, and told him that he had sold one of the teams to Shedd, and was to furnish him with freight. Stone told him that he would have nothing to do with Shedd, as he was unacquainted with him. The defendant replied that both teams were to be in company in going to and returning from Boston, and that it would make no difference which carried the load. They then agreed upon the price of the freight. A few days after, the teams came along, and the starch, by the defendant's direction, was put upon the team belonging to Shedd.

Stone et al. *v*. Foster.

Upon the return of the teams from Boston the defendant called upon the plaintiffs to furnish him with another load of starch; and they agreed to do so. The next day the teams came, and the starch was put upon the team belonging to Shedd, the defendant and his teamster assisting in loading it. After the loading was finished, the defendant called on Camp for pay for the freight of the two loads; Camp told him that the plaintiff Emery, who was then at the store, would draw an order for him to receive the money for the amount of this load, and he then could take his pay for both loads. The defendant called on Emery, at the store, and Emery commenced drawing an order on the Amoskeag Manufacturing Co., to whom the starch was to be delivered, to pay the whole of the amount of this load to the defendant, when the defendant said he was not going down himself, but Shedd would carry the load, and the order must be payable to him; the order was so made, and was taken by the defendant, who delivered it to Shedd.

When the teams returned, Emery called upon the defendant for the balance of the money received by Shedd upon the order. The defendant replied that he would see Shedd, who was then in the village, and that, if Shedd had not any money he could spare, he, the defendant, would leave it with Stone, whom he should see at Chelsea; in a short time Shedd came in and handed him twenty dollars, which is the same credited by the plaintiffs to the defendant in their account. The only minute made of the delivery was on a small book, on which those to whom the starch was sent were debited to "starch by Shedd." Shortly after this Shedd became insolvent. The defendant subsequently refused to account to the plaintiffs for the balance of the money received upon the order,— saying that he was the agent of Shedd in transacting the business. The auditor found, from the testimony of the defendant, that the defendant never received from any one the money drawn upon the order.

No other testimony than that of the parties was introduced, except as to the drawing the order on the Amoskeag Manufacturing Company.

On these facts the auditor submitted to the court to decide as to the right of recovery. The county court rendered judgment for the plaintiffs for $46.56, and interest. Exceptions by defendant.

*Vilas & Gilson* for defendant.

1.  From the facts found by the auditor, it is evident that the defendant was only agent for Shedd in the business, and hence never bound himself in any way in the matter. The defendant so told the plaintiffs in the beginning; and, from the plaintiffs' minute book, it appears evident that they so understood it, as they there entered the Starch to Shedd.

2.  It is certain that the plaintiffs never had any claim upon either Shedd, or the defendant,—if either received the money on the order, —excepting only for the balance of the same, after deducting the freight for the two loads. The balance, being $66.36, was all that the plaintiffs *could* claim, as the rest was to be in payment for freight. Therefore the county court never had original jurisdiction of the cause, but it should have been brought before a justice.

3.  The book action will not lie. It is evident that this form of action was resorted to, solely to enable the plaintiffs to testify, as all the facts were found on their testimony.

*J. Colby* for plaintiffs.

1.  The first question presented by the report is, who was repónsible to the plaintiffs for the starch delivered, and accountable for the money drawn upon the order? We contend that the fact disclosed by the defendant to the plaintiff, that he was to *furnish* freight to Shedd, is of itself sufficient to make the defendant, and him alone, liable as principal to the plaintiffs. It does not appear that Foster was to *assist* Shedd in obtaining freight,—but he was to *furnish* him with freight.

Again,—it seems that Stone notified Foster, at once, that he would have nothing to do with Shedd, as he was unacquainted with him. Foster replied that it would make no difference which of the teams carried the load. There can be no doubt but that Stone regarded Foster as the only man to whom he was to look for the fulfilment of the contract; and there is as little doubt that the acts of Foster were such as to warrant the conclusion.

Again,—we find Foster directing and controlling the business through the entire transaction; and it seems to us that sufficient is here brought to light, to leave no doubt, that, in point of fact, Shedd

was the mere agent of Foster, and that the pretended sale of the team was a mere colorable transaction.

2. In relation to the fact testified to by the defendant, that he, in person, did not receive the money drawn on the order, we have to say that it appears that the *order* was delivered to the defendant *in person*, which was sufficient to make him accountable therefor; and it makes no difference, in a legal point of view, whether the defendant received the money by himself, or by his agent.

3. As to the finding of facts from the testimony of the plaintiffs alone, we think that is sufficiently settled. See 2 Aik. 81; 6 Conn. 207.

The opinion of the court was delivered by

HEBARD, J. The defendant objects to the auditor's report for want of original jurisdiction in the county court. But this objection is obviated by the account itself, which shows a jurisdiction. If the plaintiffs are entitled to recover the balance which they claim, then their whole account being for more than one hundred dollars gives the county court jurisdiction.

The defendant also objects to the subject matter of the claim, as not being the proper subject of the book action. But we see but little foundation for this objection. The charge is for money received upon an order. It has long since been settled that money might be charged and recovered on book, and it matters little of whom it was received, if it was the plaintiffs' money; the right to recover must depend upon the showing before the auditor.

But the main point that has been relied on is, whether the plaintiffs had a right to make this charge to the defendant; and this must depend upon the facts found by the auditor; and if these facts are found upon competent testimony, the finding of the auditor is conclusive. The auditor has found that the defendant contracted for the transporting the starch,—that the defendant called for the pay,—that the order was drawn and delivered to the defendant, and at his request made payable to Mr. Shedd. From all this it appears that the defendant was the principal in the business, and that what Shedd did was in a subordinate capacity, and that he only seconded and carried into effect the directions and arrangements of the de-

fendant,—and the auditor has also found that the plaintiff's refused to have any thing to do with Shedd.

The defendant also objects to the report on the ground that it details the testimony, and not the facts found. If this were so, it would be a good reason for recommitting the report to the auditor to find the facts which must govern the case. The auditor has not found in express terms that Shedd was the agent of the defendant, and we think the county court would have been justified in rejecting the report for that reason. But as the report was not rejected, and as the auditor has found such facts as constitute an agency, it is not necessary now to recommit it. In that respect the county court were at liberty to exercise a discretion which does not belong to this court.

There being no error in law in accepting the report, the judgment of the county court is affirmed.